IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SHARON ROGERS,                )
                              )
         Plaintiff,           )
                              )
v.                            )   No. CIV-22-670-R
                              )
CURAHEALTH OKLAHOMA, LLC,     )
and its agents,               )
                              )
         Defendant.           )

# ORDER

This action arises from Defendant Curahealth Oklahoma's LLC's decision to terminate the employment of Plaintiff Sharon Rogers for misconduct. There is no dispute that Ms. Rogers, who was employed by Curahealth as a Lead Respiratory Therapist, told a patient's daughter that the daughter killed the patient. Ms. Rogers nevertheless contends that the termination was racially motivated because the person who fired her used a racial slur while questioning her about the incident. In her Amended Complaint [Doc. No. 14], Ms. Rogers asserts claims against Curahealth for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Oklahoma Anti-Discrimination Act as well as a claim for intentional infliction of emotional distress under state law. Defendant Curahealth moves for summary judgment on each of these claims [Doc. No. 28]. The matter is fully briefed [Doc. Nos. 36, 42] and at issue.

## FACTUAL BACKGROUND[1]

Ms. Rogers, who is black, was employed by Curahealth as a Lead Respiratory Therapist. Def.'s UMF ¶¶ 11-12. On January 10, 2019, a nurse on duty at Curahealth found a patient unresponsive and called a "Code Blue" which summoned trained hospital staff to the patient's room to take appropriate measures. However, the patient ultimately died. *Id.* ¶ 13.

The patient's family was notified of the death. Ms. Rogers and Lori Sholer, a "house supervisor" or charge nurse employed by Curahealth, spoke to the patient's daughter about the incident. *Id.* ¶ 16. When the daughter asked "so I killed my dad?", Ms. Rogers responded "yes ma'am" and described the patient's cause of death. *Id.* ¶ 18. Ms. Rogers also identified herself as the "Director of Pulmonary Health," a title which she claims was used interchangeably with Lead Respiratory Therapist. *Id.* ¶ 19. Ms. Rogers admits that she notified the patient of the cause of death even though the medical examiner, in accordance with hospital protocol, has the sole responsibility for determining the cause of death. *Id.* at ¶¶ 20, 32.

During its investigation into the incident, Curahealth management was advised that Ms. Rogers recorded the conversation with the patient's daughter and told another

---

[1] Unless otherwise noted, the facts in this section include properly supported facts stated by Defendant in its supporting brief that are admitted or undisputed by Plaintiff in her response.

employee to take photographs of the patient's room, both of which are against policy.[2] *Id.* ¶¶ 22, 26, 28. Ms. Rogers now denies that she instructed anyone to take photographs or make a recording. As part of its investigation, Ms. Rogers was interviewed by Scott Denny, Curahealth's Corporate Chief Compliance Officer, and Brenda Hood, Curahealth's Chief Executive Officer. *Id.* ¶ 34. Ms. Hood and Ms. Rogers attended the meeting in person, while Mr. Denny attended by phone. Plaintiff asserts that during the conversation, Mr. Denny asked her how many degrees she has, she told him, and Mr. Denny then chuckled and said "oh, I see…we call that n***er-itis." *Id.* at ¶ 37. Curahealth denies that Mr. Denny used a racial slur during the meeting. Plaintiff was ultimately terminated from her position for misconduct. Ms. Sholer, who is white, was also terminated for her role in the incident. *Id.* ¶¶ 42-43.

Following her termination, Ms. Rogers timely filed a complaint of racial discrimination with the Equal Employment Opportunity Commission. *Id.* ¶ 1. The EEOC issued a right to sue letter on December 18, 2019. *Id.* ¶ 2. Starting on March 16, 2020, the Oklahoma Supreme Court issued a series of emergency orders in response to the Covid-19 pandemic that suspended deadlines and tolled limitations periods. Pl.'s Exs. 1-3. This tolling period expired on May 15, 2020. *Id.* On May 18, 2020, Plaintiff filed an action in state court asserting claims based only on state law. Def.'s UMF ¶ 7. That action was voluntarily dismissed. *Id.* ¶ 8. Plaintiff then re-filed her action on January 21, 2022 and

---

[2] Ms. Rogers objects to some of Curahealth's evidence on the ground that it contains hearsay statements. The statements are not hearsay because they are used to show their effect on the recipient and not for the truth of the matter asserted.

added a claim under Title VII. *Id.* ¶ 9. Curahealth removed the case to this Court and Ms. Rogers amended her complaint to include claims under Title VII, 42 U.S.C. § 1981, and the Oklahoma Anti-Discrimination Act and a claim for intentional infliction of emotional distress.

Curahealth contends that summary judgment in its favor is warranted because the Title VII claim is time barred, Ms. Rogers lacks standing to assert a claim under the OADA, and no rational trier of fact could find for Mr. Rogers on any of the claims given the undisputed material facts.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.... An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts'

that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)).

Importantly, at this stage, the court's role is not "to weigh the evidence and determine the truth of the matter," but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249–52. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## DISCUSSION

### A. Title VII Claim

"There are two limitations provisions that together fix the time frame for bringing suit under Title VII." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch*., 465 F.3d 1184, 1186 (10th Cir. 2006). First, a Title VII claimant must timely file a charge of discrimination with the Equal Employment Opportunity Commission. *Id.* (applying 42 U.S.C. § 2000e-5(e)(1)). Second, a Title VII claimant must initiate legal action within 90 days of receiving a right to sue letter from the EEOC. *Id.* (applying 42 U.S.C. § 2000e-5(f)(1)). This latter requirement "'is not a jurisdictional prerequisite' but 'a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling.'" *Panicker v. Compass Grp. U.S.A. Inc*., 712 F. App'x 784, 785 (10th Cir. 2017) (quoting *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995)).

To show that her Title VII claim was filed within 90 days of receiving her right to sue letter, Ms. Rogers relies on the Oklahoma Supreme Court's emergency orders tolling

the statute of limitations during the Covid-19 pandemic. Curahealth counters that these tolling orders do not apply to a federal limitations period and the Title VII claim is therefore time barred. Ms. Rogers barely musters an argument in response and merely contends that the Tenth Circuit has not specifically addressed the issue.[3]

It is beyond peradventure that federal claims, even when initially raised in state court, are governed by federal law. Title VII, as a function of federal law, requires a claimant to initiate suit within 90 days of receiving a right to sue letter; a state supreme court's tolling orders cannot and do not alter this requirement. *See DelCostello v. Int'l Bd. of Teamsters*, 462 U.S. 151, 159 n. 13 (1983) ("[T]he choice of a limitations period for a federal cause of action is itself a question of federal law."); *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 961 (10th Cir. 1991) ("When Congress has provided a federal statute of limitation for a federal claim, however, state tolling and saving provisions are not applicable.") *abrogated on other grounds as stated in Keeler v. Cereal Food Processors*, 250 F. App'x 857, 860–61 (10th Cir. 2007); *Sampat v. Dep't of Child. & Fams. Disability Determination Servs.*, No. 20-4070, 2021 WL 2017409, at *3 (D. Kan. May 20, 2021) (administrative order from state supreme court suspending deadlines due to Covid-19 pandemic did not toll Title VII's 90 filing requirement); *Willard v. Indus. Air, Inc.*, No. 20-CV-00823, 2021 WL 309116, at *3 (M.D.N.C. Jan. 29, 2021) (same).

Ms. Rogers did not initiate her action within 90 days of receiving a right to sue letter from the EEOC and her Title VII claim is therefore time barred.

---

[3] Plaintiff does not argue that she is entitled to equitable tolling on any other basis.

## B. Oklahoma Anti-Discrimination Act Claim

The Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, §§ 1301 *et seq.*, requires an aggrieved party to "file a charge of discrimination in employment with the Attorney General's Office of Civil Rights Enforcement or the Equal Employment Opportunity Commission" prior to asserting a claim for employment discrimination. Okla. Stat. tit. 25, § 1350(B). Curahealth argues that Ms. Rogers never filed a charge of discrimination with the Attorney General's Office and she therefore lacks standing to bring a claim under the OADA. However, as Ms. Rogers points out, the OADA requires a claimant to file a charge of discrimination with either the Attorney General's Office or the EEOC. *Id.*; *see also Moler v. Enbridge Emp. Servs., Inc.,* No. CIV-20-00515-PRW, 2022 WL 331014, at *2 (W.D. Okla. Feb. 3, 2022) ("To bring a claim under the OADA, the aggrieved party must have filed a charge with the EEOC or the state administrative agency within 180 days from the date of the alleged unlawful employment practice."); *Tolbert v. Ean Servs., LLC*, No. 15-CV-735, 2016 WL 796096, at *3 (N.D. Okla. Feb. 26, 2016) ("Similarly, the OADA requires a plaintiff to file a charge of discrimination with either the EEOC or Oklahoma Attorney General's Office within 180 days from the last date of alleged discrimination."). Ms. Rogers timely filed a charge of discrimination with the EEOC and the charge form states that it is to be jointly filed with the EEOC and the state agency. Accordingly, the Court is not persuaded that Curahealth is entitled to summary judgment on this basis.

## C. Racial Discrimination Claim Under 42 U.S.C. § 1981

Section 1981 of Title 42 of the United States Code "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency,*

421 U.S. 454, 460 (1975); *see also Perry v. Woodward,* 199 F.3d 1126, 1133 (10th Cir. 1999). However, "[o]nly intentional discrimination may violate section 1981." *Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir. 1994).[4] Where, as here, a plaintiff alleging intentional discrimination relies on circumstantial evidence,[5] the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), applies. *Lounds v. Lincare*, Inc., 812 F.3d 1208, 1221 (10th Cir. 2015).

Under this framework, a plaintiff seeking to avoid summary judgment must first "raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (quotation omitted). If the plaintiff does so, "the burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id*. (quotation omitted). "[A]t the final step, the burden shifts back to the plaintiff to demonstrate that the employer's explanations were pretextual—i.e., unworthy of belief." *Id*. (quotation omitted). Pretext is typically shown "by producing evidence of 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

---

[4] This burden shifting framework also applies to claims brought under Title VII. *Kendrick v. Penske Transp. Services,* 220 F.3d 1220, 1225. Accordingly, even if Ms. Rogers' Title VII claim were not time barred, it would fail on the merits for the same reasons articulated herein.

[5] Ms. Rogers relies on the *McDonell Douglas* framework and does not argue that Mr. Denny's use of a racial slur is direct evidence of discrimination. *See Hall v. U.S. Dep't of Lab., Admin. Rev. Bd*., 476 F.3d 847, 855 (10th Cir. 2007) ("Statements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements.").

employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Jaramillo v. Colorado Jud. Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) (quoting *Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323 (10th Cir.1997)).

Assuming Ms. Rogers can make out a prima facie case of discrimination, her claim ultimately fails at the final step because she lacks sufficient evidence from which a reasonable juror could conclude that Curahealth's proffered nondiscriminatory reason for the termination was pretextual. Curahealth asserts that Ms. Rogers was terminated because she committed serious breaches of hospital policy, including by causing recordings to be made and by making inappropriate statements to a patient's family member.[6] To show that these proffered reasons are a pretext for racial discrimination, Ms. Rogers argues that she was "doing a great job" prior to this incident and points to the racial slur uttered by Mr. Denny during her interview.[7] Because all doubts must be resolved in favor of the

---

[6] Although Ms. Rogers now claims she was not involved in recording the conversation with the patient's family member or instructing anyone to take photographs, there is no genuine factual dispute that Curahealth had a good faith basis for its belief that Ms. Rogers was responsible. *Sorbo v. United Parcel Serv*., 432 F.3d 1169, 1178 (10th Cir. 2005) (stating that "the relevant inquiry" in discrimination cases "concerns the belief of the employer that the employee engaged in misconduct, not whether the actual facts, as shown by evidence extrinsic to the employer's assessment, may have been otherwise."). Even more significantly, Ms. Rogers admits that she violated hospital policy by advising a patient's family as to the patient's cause of death.

[7] Ms. Rogers also points to an affidavit of a Curahealth employee stating that a few days after the incident, she heard two Curahealth staff members use a racial slur to refer to Ms. Rogers. Putting aside the fact that she apparently did not properly disclose these statements in her discovery materials, discriminatory "comments by non-decisionmakers are not

nonmoving party at the summary judgment stage, the Court assumes the remark was made and that it was directed at Ms. Rogers. This single remark is not, however, sufficient to show that Curahealth's proffered reason for the termination is unworthy of credence given that Ms. Rogers admits she committed a serious a breach of policy and there is no evidence that similarly situated employees were treated differently. Indeed, her claim is significantly undermined by the fact that Curahealth also terminated a white employee for her role in the underlying incident. The alleged remark is abhorrent, but it was an isolated statement made while discussing Ms. Rogers' educational background and does not create a genuine dispute regarding the sincerity of Curahealth's reason for the termination. *See Heim v. State of Utah*, 8 F.3d 1541, 1546 (10th Cir. 1993) (finding that supervisor's single offensive comment made in an angry outburst did not raise an inference of discrimination).

Summary judgment is required "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Reviewing the record as a whole, and resolving all factual disputes in Ms. Rogers' favor, no rational juror could conclude that Ms. Rogers' termination was motivated by intentional discrimination as opposed to her misconduct. Accordingly, Curahealth is entitled to summary judgment on Ms. Rogers' claim under § 1981. For the same reasons, Curahealth is also entitled to summary judgment on Ms. Rogers' claim under the OADA. *Yandell v. Grigsby's Carpet Showroom, Inc.*, No.

---

material in showing the [defendant's] action was based on [] discrimination." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

11-CV-174-, 2012 WL 1901216, at *1 (N.D. Okla. May 25, 2012) ("Where a plaintiff's federal discrimination claim fails, so too does her OADA claim.").

### D. Intentional Infliction of Emotional Distress Claim

To maintain a claim for intentional infliction of emotional distress, Oklahoma law requires "proof that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). Mere insults and indignities do not meet this standard. *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986). Plaintiff claims she was referred to by a racist, demeaning term, but this single statement, even when considered in connection with her termination, is not so extreme and outrageous that it may support a claim for intentional infliction of emotional distress. *See Battle v. J-M Mfg. Co.,* No. 09-CV-106-TCK-FHM, 2011 WL 43066, at *13 (N.D. Okla. Jan. 5, 2011) (racial slurs and jokes are insufficient to support a claim of intentional infliction of emotional distress under Oklahoma law). Accordingly, Curahealth is entitled to summary judgment on this claim.

### CONCLUSION

For the reasons explained above, Defendant Curahealth's Motion for Summary Judgment [Doc. No. 28] is GRANTED.

IT IS SO ORDERED this 25th day of September 2023.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE